IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASHANDEEP SINGH,

    Petitioner,

        v.

TODD M. LYONS, et al.,

    Respondents.

:  Civil No. 3:25-CV-2388
:
:
: (Judge Munley)
:
: (Chief Magistrate Judge Bloom)
:
:
:
:

## REPORT AND RECOMMENDATION

### I.   Statement of the Case

This case comes before us for consideration of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by the petitioner, Jashandeep Singh, an immigration detainee.[1]  Singh is a native of and citizen of India who has resided in the United States since 2023.[2] According to immigration documents, Singh entered the United States on May 24, 2023, was arrested by United States Border Patrol, and subsequently released with a Notice to Appear, which indicated that Singh was "not then admitted or paroled after inspection by an

---

[1] Doc. 1.
[2] Doc. 1 at 11; Doc. 8-1 at 1.

Immigration Officer."[3]   Singh was apprehended by immigration authorities in Philadelphia, Pennsylvania in November of 2025 at a commercial vehicle inspection checkpoint.[4]   He was arrested and transferred to the Pike County Correctional Facility, where he remains detained pending the outcome of his removal proceedings.[5]   Singh also has an asylum application pending in immigration court.[6]

In his petition, Singh asserts that he is being wrongfully detained pursuant to 8 U.S.C. § 1225(b), and instead, should be considered for release under § 1226(a) and provided the opportunity for a bond hearing.[7] Singh argues in large part that he is a member of the "Bond Eligible Class" certified in *Maldonado Bautista*,[8] and as such, he is entitled to a bond hearing under § 1226(a).[9]  For their part, the respondents contend that *Maldonado Bautista* is not controlling on this court, and further,

---

[3] Doc. 8-1 at 2; Doc. 8-2 at 1.

[4] Doc. 8 at 5; Doc. 8-1.

[5] Doc. 1 at 11; Doc. 8-1 at 5; Doc. 8-3.

[6] Doc. 1 at 11.

[7] *See* Doc. 1.

[8] *Maldonado Bautista v. Santacruz, et al.*, Civ. No. 25-1873, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).

[9] *Id.*

that Singh is properly detained under § 1225 and thus not entitled to a bond hearing.[10]

After careful consideration, we will recommend that the petition be denied.

## II.    Discussion

Claims by immigration detainees in federal custody "fall within the 'core' of the writ of habeas corpus[,]" and must be brought in a petition for habeas corpus pursuant to 28 U.S.C. § 2241.[11]  Jurisdiction for a core habeas petition "lies in only one district: the district of confinement."[12] While the Court of Appeals has seemingly narrowed this court's jurisdiction to consider claims related to immigration detention during an alien's removal proceedings,[13] the parties to the instant petition concede that we have jurisdiction to consider this petitioner's claim regarding his ongoing detention.[14]

---

[10] Doc. 8.

[11] *Trump v. J.G.G.*, 604 U.S. 670, 372 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)); *Kumarasamy v. Attorney General of U.S.*, 453 F.3d 169, 172 (3d Cir. 2006).

[12] *J.G.G.*, 604 U.S. at 672 (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)).

[13] *Khalil v. President, United States of America, et al.*, --- F.4th ---, 2026 WL 111933 (3d Cir. Jan. 15, 2026).

[14] Doc. 11.

In the instant petition, we must determine whether the petitioner is subject to the provisions of Section 1225(b)(2) or Section 1226(a) of the Immigration and Nationality Act ("INA").[15]  These provisions govern the detention of noncitizens pending removal proceedings.[16]  We begin with the petitioner's argument that he is entitled to a bond hearing pursuant to *Maldonado Bautista*.  The petitioner asserts that he is a member of the nationwide class certified by the United States District Court for the Central District of California in *Maldonado Bautista v. Santacruz, et al.*[17]  In November of 2025, the *Bautista* Court broadly certified a "Bond Eligible Class" consisting of:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), §1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.[18]

It then extended the declaratory relief previously granted to the petitioners in that matter to the class as a whole, declaring DHS' policy

---

[15] 8 U.S.C. §§ 1225(b)(2), 1226(a).

[16] *Jennings v. Rodriguez*, 583 U.S. 281, 287-89 (2018).

[17] *Maldonado Bautista v. Santacruz, et al.*, Civ. No. 25-1873, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).

[18] *Id.* at *9.

unlawful and finding that such relief "secures a right [of the class members] to an individualized hearing."[19]

At the outset, the petitioners in *Bautista* did not request class-wide habeas relief; only the named petitioners applied for habeas relief.[20] As the Court there noted, "[i]f Petitioners had requested classwide declaratory habeas relief, such relief could extend only to members of the Bond Eligible Class *residing within this judicial district*."[21] Accordingly, even if the petitioner believed he is considered a class member entitled to such relief, he must seek that relief in the Central District of California. Further, as one district court examining this issue noted, the Supreme Court of the United States has cast doubt on whether "class relief may be obtained in a habeas proceeding[,]" reasoning that "[t]he Supreme Court has 'never so held, and it is highly questionable whether it is permitted.'"[22]

---

[19] *Id.* ("When considering this determination with the MSJ Order, the Court extends the same declaratory relief granted to Petitioners to the Bond Eligible Class as a whole.").
[20] *Id.*
[21] *Id.* (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)) (emphasis added).
[22] *Tecum Pastor v. Director of Detroit Field Office, U.S. Immigration and Customs Enforcement*, --- F. Supp. 3d. ---, 2025 WL 3746495, at *5 (N.D.

In any event, contrary to the petitioner's assertion, we are not bound by *Bautista*. It is well settled that "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."[23] While we respect the *Bautista* Court's holding as to those within its purview, we respectfully disagree that the petitioner here, who is detained in the Middle District of Pennsylvania, is afforded relief by way of that holding. Accordingly, the petitioner's reliance on *Bautista* is unavailing and, in our view, does not entitle him to habeas relief.

Next, we must determine, then, if the petitioner is properly detained pursuant to Section 1225(b). Courts nationwide have been tasked with interpreting this statute given what some have characterized as ambiguity in the phrases "applicant for admission" and "seeking admission" in Section 1225. "As in any statutory construction case, '[w]e start, of course, with the statutory text,' and proceeding from the

---

Ohio Dec. 24, 2025) (quoting *A.A.R.P. v. Trump*, 605 U.S. 91, 107 (2025) (Alito, J., dissenting)).

[23] *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed.2011)).

understanding that, '[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.'"[24]

Section 1226(a) broadly applies to noncitizens facing removal proceedings and provides that individuals detained under this section may be released on bond pending a final order of removal.[25] On the other hand, Section 1225(b)(2)(A) requires that "an alien who is an applicant for admission, if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title."[26] This section defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)[.]"[27] The statute does not clearly define the phrase "seeking admission."

Courts across the country have grappled with this statutory text, with a majority concluding that the phrases "applicant for admission"

---

[24] *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (citation omitted).
[25] 8 U.S.C. § 1226(a).
[26] *Id.* § 1225(b)(2)(A) (emphases added).
[27] *Id.* § 1225(a)(1).

and "seeking admission" are legally distinct.[28]  In these cases, courts have found that noncitizens who have resided in the United States for some period of time, but who have not actively sought legal status, qualify as "applicants for admission" but not as individuals "seeking admission," and thus, they are not subject to the mandatory detention provision of Section 1225(b)(2)(A).[29]  The rationale behind several of these decisions appears to be based on thos courts' findings that "seeking admission" requires the physical act of arriving at the border, and as such, an alien that has resided in the United States for some period of time cannot qualify as "seeking admission," even though such person wishes to be admitted and remain in the United States.[30]   Other courts have found

---

[28] *See e.g.*, *Galvan Lopez v. Noem, et al.*, Civ. No. 25-1288, 2026 WL 252513 (D.N.M. Jan. 30, 2026); *Malacidze v. Noem, et al.*, Civ. No. 25-1527, 2026 WL 227155 (W.D. Okla. Jan. 28, 2026); *Quispe v. Rose, et al.*, Civ. No. 25-2276, 2025 WL 3537279 (M.D. Pa. Dec. 10, 2025); Anirudh v McShane, et al., Civ. No. 25-6458, 2025 WL 3527528 (E.D. Pa. Dec. 9, 2025); *Martinez-Elvir v. Olson, et al.*, ---F. Supp. 3d ---, 2025 WL 3006772 (W.D. Ky. Oct. 27, 2025); *Zumba v. Bondi, et al.*, Civ. No. 25-14626, 2025 WL 2753496 (D.N.J. Sept. 26, 2025).

[29] *See id.*

[30] *See e.g.*, *Zumba*, 2025 WL 2753496, at *9 (discussing a distinction between "a noncitizen who is 'seeking admission' to the country and one who is 'already in the country'"); *Quispe*, 2025 WL 3537279, at *5 (noting that courts in the Third Circuit have described "seeking admission" as "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry.").

that "seeking admission" requires the affirmative act of applying for some sort of legal status, such as for asylum or a visa.[31]    Ultimately, these courts have concluded that noncitizens who have resided in the United States for some period of time cannot be characterized as "seeking admission" since they are already in the United States and are therefore not subject to Section 1225(b)(2)(A)'s mandatory detention provision.

A minority of district courts and the only circuit court to decide this issue, however, have concluded that the plain text of Section 1225 establishes that "applicants for admission" are necessarily "seeking admission," and therefore subject to detention under Section 1225(b)(2)(A).[32] After careful consideration, we agree that "one who is an

---

[31] *See e.g.*, *Galvan Lopez*, 2026 WL 252513, at *4 (" 'Seeking admission' requires an active request for lawful admission. . .") (citations omitted); *Martinez-Elvir*, 2025 WL 3006772, at *9 (finding that the petitioner, "who ha[d] been present in the country for over twelve years . . . [and] has never attempted to gain lawful entry into the United States" was not "seeking admission.");

[32] *See e.g.*, *Buenrostro-Mendez v. Bondi, et al.*, --- F.4th ---, 2026 WL 323330 (5th Cir. Feb. 6, 2026); *Chen v. Almodovar, et al.*, Civ. No. 25-9670, 2026 WL 100761 (S.D.N.Y. Jan. 14, 2026); *Singh v. Noem, et al.*, Civ. No. 25-157, 2026 WL 74558 (E.D. Ky. Jan. 9, 2026); *Gomez Hernandez v. Lyons, et al.*, Civ. No. 25-216, 2026 WL 31775 (N.D. Tx. Jan. 6, 2026); *Montoya v. Holt, et al.*, Civ. No. 25-1231, 2025 WL 3733302 (W.D. Okla. Dec. 26, 2025); *Altamirano Ramos v. Lyons, et al.*, ---F. Supp. 3d ---, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025); *Mejia Olalde v. Noem, et al.*, Civ. No. 25-168, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025).

9

'applicant for admission' is, by definition, 'seeking admission[,]'"[33] and is consequently subject to the mandatory detention provision of Section 1225(b)(2)(A).

We begin with the statute's definition of an "applicant for admission," which as we have noted encompasses "[a]n alien *present in the United States* who has not been admitted."[34]   The INA defines "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."[35]   Thus, the plain reading of this text is not limited to those physically arriving at the border; it necessarily includes noncitizens who have been residing in the United States but have not been lawfully admitted.  Indeed, as at least one court has noted, while subsection (b)(1) specifically contemplates "aliens *arriving* in the United States[,]"[36] "nothing in § 1225(b)(2)(A) limits its applicability to 'arriving' aliens."[37]   Thus, the fact that a petitioner has resided in the United States does not automatically render

---

[33] *Singh*, 2026 WL 74558, at *4.

[34] 8 U.S.C. § 1225(a)(1) (emphasis added).

[35] *Id.* § 1101(13)(A).

[36] § 1225(b)(1) (emphasis added).

[37] *Singh*, 2026 WL 74558 at *4; *Mejia Olalde*, 2025 WL 3131942, at *3 (describing subsection (b)(2) as the "catchall" provision of Section 1225).

Section 1225(b)(2)(A) inapplicable—the text of the statute plainly encompasses aliens who are "present in the United States" who have not lawfully been admitted.[38]

While the phrase "seeking admission" is not defined in the INA, Section 1225 twice "expressly treats applicants for admission as among those seeking admission."[39]    As the Honorable John Cronan aptly explained:

> First, Section 1225(a)(5) provides that "[a]n applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions *of the applicant in seeking admission* to the United States." 8 U.S.C. § 1225(a)(5) (emphasis added). This provision contemplates that an applicant for admission is one who, by default, is seeking admission.
>
> Second, and similarly, Section 1225(a)(3) specifies that "[a]ll aliens (including alien crewmen) who are applicants for admission *or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration officers." *Id.* § 1225(a)(3) (emphasis added). That provision "reinforces the reading that all 'applicants for admission' are 'seeking admission' because it recognizes that there are 'other[ ]' ways to seek admission besides being an 'applicant[ ] for admission.' " *Mejia Olalde v. Noem*, No. 1:25-cv-00168-JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025); *accord Altamirano Ramos v. Lyons*, --- F. Supp. 3d ----, No. 2:25-cv-9785-SVW-AJR, 2025 WL 3199872, at *5 (C.D. Cal. Nov. 12, 2025). The word "otherwise," after all, means to

---

[38] 8 U.S.C. §1225(a)(1).

[39] *Chen*, 2026 WL 100761, at *9.

do something "[i]n a different way" or "in another manner," Otherwise, Black's Law Dictionary (12th ed. 2024), so Section 1225(a)(3) recognizes that one way to seek admission is to be an applicant for admission, even if there are other ways to do so. *Accord* Otherwise, Merriam-Webster, https://www.merriam-webster.com/dictionary/otherwise (last visited Jan. 14, 2026) (defining "otherwise" as (1) "in a different way or manner," (2) "in different circumstances," and (3) "in other respects").[40]

As explained by another court examining the interplay of Section 1225(a)(3) in this context, "[t]he word 'otherwise' establishes that 'aliens . . . seeking admission' is the category to which "applicants for admission' belong."[41]  And because Congress created this relationship between the phrases "applicant for admission" and "seeking admission" in the same statute, we cannot "abandon [the] usual presumption that 'identical words used in different parts of the same statute' carry 'the same meaning.'"[42]   Indeed, as another court noted, "it makes no sense to describe an active applicant for admission as somebody who is not 'seeking' admission. To 'seek' is a synonym of to 'apply' for."[43]

---

[40] *Id.* at *9.

[41] *Montoya*, 2025 WL 3733302, at *8.

[42] *Id.* at *9 (quoting *Henson v. Santander Consumer USA, Inc.*, 582 U.S. 79. 85 (2017) (internal citation omitted)).

[43] *Mejia Olalde*, 2025 WL 3131942, at *3.

To find otherwise would create illogical implications. As the *Singh* Court noted, if we conclude that an alien is not seeking admission unless or until he or she formally applies for legal permission to remain in the United States, we would essentially be encouraging those who reside here but who have not lawfully been admitted to do nothing while punishing those who have taken steps to obtain lawful permission by subjecting them to mandatory detention. Such an outcome is nonsensical in our view.

Nor can we conclude that there is some geographic or temporal limitation after which an alien residing in the United States is no longer "seeking admission." As the *Mejia Olalde* Court noted, the surrounding provisions, such as Section 1225(b)(1)(A)(i) and (b)(1)(A)(iii), specifically apply to an alien "arriving" in the United States and an alien who must show continued presence in the United States "continuously for the 2-year period immediately prior[,]" respectively.[44]   Because Section 1225(b)(2) contains no such limiting language, it is logical to conclude that "[i]f Congress meant to say that an alien is no longer 'seeking admission' after some amount of time in the United States, Congress

---

[44] 8 U.S.C. §§ 1225(b)(1)(A)(i), (b)(1)(A)(iii).

knew how to do so."[45] Thus, we do not read Section 1225 to limit an alien's act of "seeking admission" to physically arriving at the border or only immediately following their arrival to the United States or some other finite period.

This reading of Section 1225 was very recently adopted by the Fifth Circuit Court of Appeals in *Buenrostro-Mendez v. Bondi, et al.*[46] As of the time this Report and Recommendation is written, the Fifth Circuit is the only circuit to have squarely addressed this issue.[47] In holding that an "applicant for admission" is necessarily "seeking admission," the Court of Appeals set forth a thorough and reasoned analysis of the plain text of Section 1225.[48] Similar to our analysis above, the Court looked at the surrounding provisions of Section 1225, including 1225(a)(3) and 1225(a)(5), and found that the plain meaning of the words used in these provisions supports the conclusion that those who are "applicants for

[45] *Mejia Olalde*, 2025 WL 3131942, at *4.
[46] *Buenrostro-Mendez v. Bondi, et al.*, --- F.4th ---, 2026 WL 323330 (5th Cir. Feb. 6, 2026).
[47] *See Castanon-Nava v. U.S. Dep't of Homeland Security*, 161 F.4th 1048, 1061-62 (7th Cir. 2025) (concluding in the context of a request for injunctive relief that the government was not likely to succeed on the merits of its argument regarding mandatory detention under Section 1225).
[48] *Id.* at *4-10.

admission" are necessarily "seeking admission."[49]  The Court reasoned that any other reading of the statute "would return to the pre-IIRIRA regime in which illegal entrants receive favorable treatment compared to aliens lawfully undergoing admission procedures."[50]  The Court was further unpersuaded by the petitioners' argument that the government's longstanding practice, alone, justified a reading of the text that goes against the plain meaning of the statute.[51]  We agree with this reasoned analysis and the others we have found persuasive and conclude that an "applicant for admission" is necessarily "seeking admission," and therefore, is subject to mandatory detention under Section 1225(b)(2)(A).

Turning to the instant petition, Singh arrived in the United States in 2023, and despite residing here for over two years, was never lawfully admitted or paroled.[52]  Singh, who currently has an asylum application pending, is contesting his removal from the United States, which necessarily means he is seeking lawful admission to the United States. Accordingly, we conclude that Singh is an applicant for admission and

---

[49] *Id.*

[50] *Id.* at *6.

[51] *Id.* at *8.

[52] Doc. 8-2.

seeking admission, and thus, is properly detained pursuant to § 1225(b). Because we conclude that Singh is properly detained pursuant to § 1225(b), we recommend that his requests for release and for an order directing immigration officials to afford him a bond hearing be denied.[53]

In closing, we recognize that we are among the minority of courts to reach this conclusion, and we appreciate the reasoned analyses of our colleagues in this district and elsewhere that have reached a different conclusion. However, we are persuaded by and agree with those courts that have concluded that Section 1225(b) compels mandatory detention for petitioners like Singh.

III. Recommendation

Accordingly, for the foregoing reasons, upon consideration of this petition for writ of habeas corpus, IT IS RECOMMENDED that the petition be DENIED.

---

[53] Because we are recommending the petition be denied, we decline to reach the petitioner's request for attorney's fees under the Equal Access to Justice Act ("EAJA"). However, we note that this issue is currently pending in the Third Circuit Court of Appeals. *See Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, Civ. No. 3:25-CV-1896, 2025 WL 3513152, at *4 (M.D. Pa. Dec. 8, 2025) (Wilson, J) (citing *Abioye v. Warden Moshannon Valley Corr. Center*, No. 24-3198 (3d Cir.)).

The petitioner is further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

DATED: February 10, 2026

17