IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASHANDEEP SINGH,
          Petitioner

v.

TODD M. LYONS, Acting Director
Immigration and Customs
Enforcement, *et al.*,
          Respondents

:   No. 3:25cv2388

:

:   (Judge Munley)

:

:   (Chief Magistrate Judge Bloom)

**FILED
SCRANTON**

FEB 2 5 2026

PER_____
        DEPUTY CLERK

## MEMORANDUM

Petitioner Jashandeep Singh was working as a truck driver for a federally registered motor carrier based out of Indiana.[1] He was issued a commercial driver's license by that state. On November 19, 2025, Singh was transporting a load of Mexican food products from Georgia to New York.

At approximately 10:30 AM, at a rest area along Interstate 84, Singh was subject to a roadside inspection. According to the inspection report, petitioner could not produce physical copies of his tractor or trailer registration cards. And based on a Pennsylvania Public Utility Commission ("PUC") officer's review of Singh's logbooks, he had allegedly exceeded the 14-hour rule by 26 minutes two

---

[1] These facts are derived from records supplied by the United States Department of Homeland Security ("DHS"). (Docs. 8-1 to 8-4).

days earlier.  For the observed violations of the Federal Motor Carrier Safety Regulations, Singh and Singh's employer received citations.

In conjunction with the equipment and logbook inspection, Singh faced another type of review, that of the kind typically conducted by agents from United States Immigration and Customs Enforcement ("ICE").  That is, ICE agents were working alongside the PUC officers at the rest area.

Singh came to the United States from the Republic of India.  He entered the country on foot at the southern border in November 2023.  Shortly thereafter, he was arrested by United States Border Patrol and issued a Notice to Appear form.  DHS charged Singh with being present in the United States without admission or parole in violation of Immigration and Naturalization Act ("INA") Section 212(a)(6)(A)(i).[2]  He was provided a hearing date for removal proceedings.  Thereafter, the petitioner was released from custody at the border on his own recognizance.  He made his way to the Chicago metropolitan area and obtained employment as an over-the-road truck driver.  He has a pending application for asylum.  He fears being returned to India.

Returning to the roadside inspection in November 2025, ICE agents conducted a records check and determined that that Singh was subject to removal proceedings.  They arrested the petitioner.  Since that time, he has been

---

[2] See 8 U.S.C. § 1182(a)(6)(A)(i).

in immigration detention at the Pike County Correctional Facility ("Pike CCF") and is ostensibly being held pursuant to revised DHS policies and administrative reinterpretations of federal law. Id.

Singh has a merits hearing on his application for asylum in September 2026. With the prospect of spending ten months or more of immigration detention in a county jail, Singh filed a petition for writ of habeas corpus on December 11, 2025 in the Middle District of Pennsylvania. (Doc. 1).

The petition was referred to Chief United States Magistrate Judge Daryl F. Bloom and he issued a Report and Recommendation ("R&R") on February 10, 2026. (Doc. 13). The R&R recommends that Singh's petition for writ of habeas corpus be denied. (Doc. 13). Singh filed objections to the R&R shortly thereafter. (Doc. 14).

Like many of the recent immigration-related habeas petitions in this district, the overarching legal issue in this matter is whether Singh may be detained without a bond hearing under 8 U.S.C. § 1225(b)(2)(A), a mandatory detention provision. See Jennings v. Rodriguez, 583 U.S. 281, 297 (2018) (Alito, J., plurality op.) ("And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."). Most district court decisions to address the issue hold that individuals like Singh are not subject to mandatory detention

3

under Section 1225(b)(2)(A), including at least 16 decisions from jurists in the Middle District of Pennsylvania.[3]

The R&R here, however, found respondents' position more persuasive. The magistrate judge determined that Section 1225(b)(2)(A) applies to Singh's detention. In support, he looked to the Fifth Circuit Court of Appeals' decision in Buenrostro-Mendez v. Bondi, et al., --- F.4th ----, 2026 WL 323330 (5th Cir. Feb. 6, 2026) and several out-of-district immigration detention cases, which represent the minority view on the issue.

Singh's objections to the R&R are now ripe for disposition. In short, the petitioner argues that the R&R landed on the wrong side of the statutory interpretation debate. He also asserts that prolonged detention raises serious

---

[3] See Mamatkulov v. Lowe, No. 3:26CV99, 2026 WL 456917, at *4 (M.D. Pa. Feb. 18, 2026); Diallo v. Lowe, No. 3:26CV286, 2026 WL 458294, at *5 (M.D. Pa. Feb. 18, 2026); Villa Hernandez v. Kunes, No. 1:25-CV-01847, 2026 WL 411726, at *5 (M.D. Pa. Feb. 13, 2026) (Wilson, J); Patel v. O'Neill, No. 3:25-CV-02289, 2026 WL 323121, at *6 (M.D. Pa. Feb. 6, 2026) (Mehalchick, J.); Viantsko v. Lowe, No. 4:25-CV-02523, 2026 WL 313473, at *4 (M.D. Pa. Feb. 5, 2026) (Brann, C.J.); Carrero Romero v. Lowe, No. 4:26-CV-00009, 2026 WL 296215, at *5 (M.D. Pa. Feb. 4, 2026) (Brann, C.J.); Gonzalez Centeno v. Lowe, No. 3:25CV2518, 2026 WL 94642, at *4 (M.D. Pa. Jan. 13, 2026), adhered to, No. 3:25CV2518, 2026 WL 196513 (M.D. Pa. Jan. 26, 2026); Vadel v. Lowe, No. 3:25-CV-02452, 2025 WL 3772059, at *6 (M.D. Pa. Dec. 31, 2025) (Mehalchick, J.); Ramirez-Montoya v. Rose, No. 3:25-CV-02411, 2025 WL 3709045, at *5 (M.D. Pa. Dec. 22, 2025) (Mehalchick, J.); Samassa v. Lowe, No. 1:25-CV-02197, 2025 WL 3653751, at *2 (M.D. Pa. Dec. 17, 2025); Quispe v. Rose, No. 3:25-CV-02276, --- F.Supp. 3d ----, 2025 WL 3537279, at *6 (M.D. Pa. Dec. 10, 2025) (Mehalchick, J.); Cunin v. McShane, No. 3:25-CV-1887, 2025 WL 3542999, at *2 (M.D. Pa. Dec. 10, 2025) (Neary, J); Patel v. O'Neil, No. 3:25-CV-2185, 2025 WL 3516865, at *5 (M.D. Pa. Dec. 8, 2025) (Mariani, J.); Hernandez v. Rose, No. 1:25-CV-2221, 2025 WL 3284447, at *2 (M.D. Pa. Nov. 25, 2025) (Neary, J.); Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility, No. 3:25-CV-01896, 2025 WL 3522932, at *11 (M.D. Pa. Nov. 13, 2025) (Camoni, M.J), report and recommendation adopted in part, rejected in part on other grounds, No. 3:25-CV-01896, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (Wilson, J.).

due process concerns based on the date of his next immigration hearing which is presently scheduled for September 2026.   Singh's objections are persuasive. They will be sustained.  The R&R will not be adopted, and the petitioner will be ordered released from immigration detention if he is not provided a bond hearing within seven days.

**Jurisdiction**

Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  Singh filed the instant petition while he was detained within the jurisdiction of this court, and he is still currently in ICE custody within this court's jurisdiction.  Petitioner asserts that his continued detention violates his right to due process.[4]  He also asserts that the wrong provision of the INA is being used to justify his potentially indefinite detention.  Thus, the court has habeas jurisdiction over Singh's petition.[5]  Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004).

---

[4] The Fifth Amendment entitles noncitizens to due process of law in the context of removal proceedings, and thus, they are entitled to notice and an opportunity to be heard, appropriate to the nature of the case. See Trump v. J. G. G., 604 U.S. 670, 673 (2025) (citing Reno v. Flores, 507 U.S. 292, 306 (1993); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)).

[5] Although it initially raised a jurisdictional challenge, the government now concedes that the court has jurisdiction over Singh's petition. (Doc. 11).

5

**Standard of Review**

Under the Federal Magistrates Act, the district court must make a de novo determination of those portions of the R&R against which objections are made. 28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983). The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

**Analysis**

Singh's objections are specific enough to require full de novo review. After conducting that review, the petitioner is entitled to a bond hearing, as the provision relied upon by the government, 8 U.S.C. § 1225(b)(2)(A), does not apply to the petitioner. His continued detention under Section 1225 is unlawful.

From a legal standpoint, there is no decision of the Supreme Court or the Third Circuit Court of Appeals to guide the analysis. Of the district courts to rule on the issue—and there are many—no single decision binds the court in making a determination, not even a previous decision of the undersigned. See Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011). The divided decision of the Fifth Circuit in Buenrostro-Mendez may only be considered for its persuasive value, or lack

6

thereof.  As for the majority and minority views on Section 1225(b)(2)(A), it goes without saying that no legal dispute is resolved by counting noses. <u>See</u> <u>Shurtleff v. City of Bos., Massachusetts</u>, 596 U.S. 243, 256 (2022).  Furthermore, despite the frequently recurring issues found in many immigration-related habeas petitions, each case must be considered on an "*ad hoc* basis" according to the matters at issue. <u>Diallo v. Bondi</u>, No. CV 25-7421, 2026 WL 36534, at *2 (E.D. Pa. Jan. 6, 2026) (Rufe, J.).

In this case, Singh is an individual who entered the United States, was detained and released, and was then later apprehended in the interior of the United States after a period of continuous residence.  What follows is an analysis of whether his detention is governed by the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A) or by the discretionary detention provision of 8 U.S.C. § 1226(a).

**1. The Statutes at Issue**

Starting with 8 U.S.C. § 1225, that section bears the title: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."[6] <u>Id.</u>

---

[6] " '[T]the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute." <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 234 (1998) (quoting <u>Trainmen v. Baltimore & Ohio R. Co.</u>, 331 U.S. 519, 528–529 (1947)).

<u>"Applicant for Admission"</u> —Section 1225(a)(1) provides that "[a]n alien present in the United States who has not been admitted (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Definitionally, all non-admitted noncitizens, including Singh, are "applicants for admission."

Section 1225(b) is entitled "Inspection of applicants for admission." Under Section 1225(b) applicants for admission fall into one of two categories, (b)(1) or (b)(2). <u>Jennings</u>, 583 U.S. at 287. Section 1225(b)(1) does not apply to Singh.[7]

Moving on to Section 1225(b)(2), that section is entitled "Inspection of other aliens." Section 1225(b)(2)(A) provides in relevant part:

> …in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

---

[7] Section 1225(b)(1) applies to noncitizens "arriving in the United States," who are determined to be inadmissible under 8 U.S.C. § 1182(a)(6)(C) (misrepresentation of material facts provisions) or 8 U.S.C. § 1182(a)(7) (lacking documentation provisions). DHS has charged Singh with being present in the United States without admission or parole in violation 8 U.S.C. § 1182(a)(6)(A)(i).

8

Section 1225(b)(2)(A) contains two terms, "applicant for admission" and "alien seeking admission," which the minority of decisions hold are synonymous. Id. Interpretation of that section will follow below.

Apprehension and Detention - Section 1226, by contrast, bears the title "Apprehension and detention of aliens." 8 U.S.C. § 1226. This section "applies to aliens already present in the United States." Jennings, 583 U.S. at 303.

Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed[.]." 8 U.S.C. § 1226(a). "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings[,] and further "permits the Attorney General to release those aliens on bond[.]" Jennings, 583 U.S. at 303.

## 2. Section 1226(a) Applies to Singh, Not Section 1225(b)(2)(A)

"Alien Seeking Admission" – Returning to Section 1225(b)(2)(A), respondents' position is that the definitional label of "applicant for admission" as prescribed by statute in Section 1225(a)(1) is the same as the language "alien seeking admission" later in that sentence. The R&R, after review of the statute, also concludes that every "applicant for admission" is, by definition, "seeking admission." (Doc. 13 at 9–14). According to that view, this would subject all

9

unadmitted aliens to mandatory detention without bond pending removal proceedings regardless of whether they are located at the border or have spent months or years living in the interior.  Under that reading, "for purposes of immigration detention, the border is now everywhere." Buenrostro-Mendez, No. 25-20496, 2026 WL 323330 at *18 (5th Cir. Feb. 6, 2026) (Douglas, J., dissenting op.).

The court disagrees with that reading of the text.  "Applicant for admission" is specifically defined by Section 1225(a)(1), but "alien seeking admission" is not.  Thus, in short, the court reads "an alien seeking admission," as the operative language of Section 1225(b)(2)(A).  That is, "seeking admission" is the functional condition that triggers mandatory detention, not merely the definitional status of "applicant for admission" created by Section 1225(a)(1).  By statute, all non-admitted noncitizens are deemed "applicants for admission."  That is different than a noncitizen who is actively or functionally "seeking admission" through the process governed by Section 1225.

As another district court analogized:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say

> that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [petitioner], because he has already been residing in the United States for several years.

Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025). [8]

Moreover, the consensus in this district is that the phrase "alien seeking admission" in Section 1225(b)(2)(A) does independent work and requires "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry[,]" Quispe, 2025 WL 3537279, at *5 (citations omitted), and does not apply to "noncitizens like [p]etitioner who have resided in the United States for years[,]" Patel, 2025 WL 3516865 at *5 (citations omitted).

As these other well-reasoned district court cases and the Buenrostro-Mendez dissent have recognized, to adopt the position taken in the R&R would, *inter alia*, negate the plain meaning of the text, ignore context and history, violate the rule against surplusage, and render the mandatory detention of "criminal aliens" under Section 1226(c) (as expanded last year by the Laken Riley Act) as arising from a redundant statutory provision. [9] See Patel, 2025 WL 3516865 at *5

---

[8] As for the fact that Singh is seeking asylum, that application does not make him an "alien seeking admission" under Section 1225(b)(2)(A) or provide him with lawful entry to the United States; rather, that application is to obtain a lawful means to remain here. Lopez Benitez, 795 F. Supp. 3d at 488 n.7.

[9] The court will briefly address Singh's due process argument without making it the dispositive determination in this case. Even if Section 1225(b)(2)(A) was amenable to the respondents'

11

(citing <u>Centeno Ibarra v. Warden of the Fed. Det. Ctr. Philadelphia</u>, No. CV 25-6312, 2025 WL 3294726, at *6 (E.D. Pa. Nov. 25, 2025) (Rufe, J.)); <u>Buenrostro-Mendez,</u> 2026 WL 323330 at *11–16 (Douglas, J., dissenting op.).

After careful consideration, Section 1226(a) is the statute that applies to Singh's detention.[10] <u>Jennings,</u> 583 U.S. at 288 (Alito, J., plurality op.).  As noted above, Section 1226(a) authorizes release from immigration detention on bond and/or with conditions.  "At a bond hearing, a noncitizen 'may secure his release if he can convince the officer or immigration judge that he poses no flight risk and

_____

construction, which it is not, the canon of constitutional avoidance would counsel against this interpretation. <u>See</u> Amy Coney Barrett, Substantive Canons and Faithful Agency, 90 B.U. L. Rev. 109, 141–42 (2010) ("[W]hile a court may not twist the text beyond what it will bear, a judge ought to eschew the best, but unconstitutional interpretation in favor of a less plausible, but constitutional one.").

The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." <u>Zadvydas v. Davis</u>, 533 U.S. 678, 693 (2001).  Mandatory and indefinite detention of long-resident interior aliens without any individualized determination of flight risk or dangerousness raises serious due process questions. <u>Id.</u> at 690–92.  However, the court need not reach those questions about Section 1225(b)(2)(A) if Section 1226(a) governs on its own terms.

[10] Exhibit 1 of the government's response includes a Form I-286, entitled "Notice of Custody Determination," which was executed by an ICE supervisory officer at the Pike County Sub Office and served on petitioner on November 19, 2025, the date of his arrest. (Doc. 8-1 at ECF p. 5).  The form cites INA § 236, i.e., 8 U.S.C. § 1226.  The form bears the signature of the issuing officer and the date of issuance.  No reference is made anywhere on the form to INA § 235 or 8 U.S.C. § 1225(b)(2)(A). Respondents have not disputed the authenticity of the document or the accuracy of the Section 1226 designation at that time.  Consequently, this determination by ICE that Section 1226 applied to Singh shortly after his arrest would provide the court independent factual grounds to sustain the petitioner's objections to the R&R.

12

no danger to the community.'" Quispe, 2025 WL 3537279, at *6 (quoting Nielsen v. Preap, 586 U.S. 392, 397–98 (2019) (Alito, J. plurality op.)).

Singh has requested a bond hearing in his objections to the R&R. (Doc. 14 at 6). Petitioner will be granted that relief since his detention is governed by Section 1226(a), not Section 1225(b)(2)(A).[11] The court will add one caveat. If respondents provide a bond hearing within seven days that complies with the applicable procedural requirements, the immigration judge's determination as to the conditions or denial of bond will govern. If respondents fail to provide a hearing within seven days, however, Singh must be released immediately from detention on his own recognizance and without conditions pending further immigration proceedings.[12]

### 3. Attorneys' Fees and Costs

Finally, Singh requests attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. The Third Circuit recently confirmed that a habeas proceeding challenging immigration detention under 28 U.S.C. § 2241 is a "civil action" for purposes of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), and that the EAJA "unambiguously applies to habeas

---

[11] See also 8 C.F.R. §§ 1003.19, 1236.1(c)(8), 1236.1(d)(1).

[12] To the extent that Craig Lowe, Warden of Pike CCF is the only proper respondent in this matter, Lowe is acting as an agent of ICE and the government will be bound by the order. See Vadel v. Lowe, No. 3:25-CV-02452, 2025 WL 3772059, at *1 n.1 (M.D. Pa. Dec. 31, 2025).

challenges to immigration detention under 28 U.S.C. § 2241." <u>Michelin v. Warden Moshannon Valley Corr. Ctr.</u>, No. 24-2990, 2026 WL 263483, at *1–2, *10 (3d Cir. Feb. 2, 2026).  Singh will thus be permitted to file a motion for costs and fees pursuant to the EAJA within 30 days of the entry of judgment. 28 U.S.C. § 2412(d)(1)(B); <u>Villa Hernandez v. Kunes</u>, No. 1:25-CV-01847, 2026 WL 411726, at *7 (M.D. Pa. Feb. 13, 2026) (Wilson, J.).

**Conclusion**

For the reasons set forth above, Singh's objections to the R&R are sustained.  The R&R will not be adopted.  Singh's petition for writ of habeas corpus under Section 2241 will be granted.  Respondents shall provide Singh with a bond hearing within seven days.  Otherwise, Singh must be released without bond or conditions.  The government will be ordered to provide a sworn declaration next week.  An appropriate order follows.

Date: 2/25/26

BY THE COURT:

_____
JUDGE JULIA K. MUNLEY
United States District Court

14